# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                              Case No. 03-32063
                                                   Chapter 7
TERRY MANUFACTURING
COMPANY, INC.,

        Debtor.


J. LESTER ALEXANDER, III,
TRUSTEE OF TERRY                                   Adv. Pro. No. 05-3051
MANUFACTURING COMPANY,

        Plaintiff,

    v.

J. MARTIN & ASSOCIATES and
LEEZA CHERNIAK,

        Defendants.


## MEMORANDUM DECISION

    This Adversary Proceeding is before the Court on motions for summary judgment filed

by Defendant Leeza Cherniak (Doc. 35), and Defendant J. Martin & Associates, Inc.  (Doc. 40).

The motions are fully briefed.  (Docs. 36, 39, 40, 42, 46, 47).  For the reasons set forth below,

both motions are GRANTED and the Trustee's Complaint is DISMISSED WITH PREJUDICE.

## I.  FINDINGS OF FACT

### A.  Leeza Cherniak

    In January of 2003, Rudolph Terry, the Vice President of Terry Manufacturing, was

indicted in criminal proceedings in the Northern District of Atlanta.  Rudolph Terry retained

Brian Steel of The Steel Law Firm to represent him in those criminal proceedings.  It was agreed

that Steel was to be paid a flat fee of $100,000.00 for legal representation, plus an additional

$25,000.00 for an investigator.  The terms of the agreement were set out in a letter dated

February 11, 2003 from Steel to Rudolph Terry.  (Doc. 39, Ex. C).  The February 11 letter states,

in part, as follows:

> As agreed, our legal fee for my law firm as well as the law office of
> Leeza Cherniak, Exp., is one hundred thousand ($100,000.00)
> dollars.  Furthermore, you will provide twenty-five thousand
> ($25,000.00) dollars for Investigator Jimmy Martin and other
> necessary monies for expenses.  This expense money will be placed
> in The Steel Law Firm's escrow account.

(Id.).

The negotiated attorney's fee was $100,000.00, and the parties to the agreement were

The Steel Law Firm, Inc., and Rudolph Terry.  It was stipulated that Cherniak and Martin would

participate in the defense.  In reading the affidavits of Cherniak, Martin, and Rudolph Terry, it is

clear that Rudolph Terry hired Steel and Steel in turn brought in Cherniak and Martin. Cherniak

submitted a document on "The Steel Law Firm, P.C.," letterhead entitled "Retainer Agreement

Defense of Criminal Charges."  (Doc. 36, Part 3, p. 12).  The Agreement was dated February 20,

2003 and was signed by Rudolph Terry and Brian Steel on behalf of The Steel Law Firm, P.C.

The February 20 Agreement is consistent with the February 11 letter.

On February 14, 2003, Steel wrote Cherniak, enclosing a check, payable on the bank

account of The Steel Law Firm, P.C., in the amount of $20,000.00.  The letter sets out a one-

third/ two-thirds split of the attorney's fees, with The Steel Law Firm to receive two-thirds.

Cherniak later received additional checks from The Steel Law Firm, all of which totaled

$33,333.00, the agreed upon fee.  It is undisputed that the money was paid from Terry

Manufacturing to The Steel Law Firm, who in turn paid Cherniak her share of the fee.  There is

nothing in the evidence to suggest that Cherniak had any reason to know that the money paid to her came from Terry Manufacturing rather than Rudolph Terry.

It is apparent from the evidence that Steel was lead counsel in the criminal case. Rudolph Terry hired Steel, who in turn hired Cherniak. Steel negotiated the amount of Cherniak's compensation and controlled her activities in the case. If her services had not been satisfactory, it is clear that Steel could have docked her pay or terminated her employment. Cherniak had no corresponding control over Steel as Steel was dealing directly with Rudolph Terry, the client. In this employment relationship, it was Steel who controlled Cherniak and not the other way around. It would be a mischaracterization of the facts here to label Steel as a mere conduit between Terry Manufacturing and Cherniak. Steel was the initial transferee of money from Terry Manufacturing. Cherniak was, in bankruptcy law parlance, an immediate or mediate transferee from the initial transferee. See 11 U.S.C. § 550(a), (b).

As a final matter, the exchange between Steel and Cherniak of $33,333.00 for her services in the criminal case was for reasonably equivalent value. Cherniak has adequately documented the reasonableness of her fees in her Affidavit, and the Trustee has not attempted to make any showing that they were not reasonable. To be sure, Terry Manufacturing did not receive anything of value from Cherniak; however, there is no reason that it should have here, as there was no connection between Cherniak and Terry Manufacturing. In other words, Cherniak was not an initial transferee of the money from Terry Manufacturing.

-3-

### B.  J. Martin & Associates, Inc.

J. Martin & Associates, Inc., like Cherniak, was brought into the Rudolph Terry criminal case by Steel.  Martin is a firm which specializes in "tax investigations and forensic-type consulting."  (Martin Aff., Doc. 40, p. 15).  The Steel Law Firm hired Martin to analyze the financial transactions underlying the criminal prosecution.  Martin's compensation was set by Steel, its  activities were directed by Steel, and it was paid by Steel.  The evidence does not show any connection between Martin and Terry Manufacturing.

Martin contends that its services were reasonably equivalent in value to the $25,000.00 paid.  Moreover, the Trustee does not contend that Martin's services were not worth the $25,000.00 paid, but rather that Terry Manufacturing did not benefit.  Martin, like Cherniak, was not an initial transferee of money from Terry Manufacturing, but rather an immediate or mediate transferee from the initial transferee.

## II.  CONCLUSIONS OF LAW

This Adversary Proceeding is an action to recover transfers to Defendants Cherniak and Martin as fraudulent conveyances.  This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1334.  This is a core proceeding.  28 U.S.C. § 157(b)(2)(H).

### A.  Summary Judgment standard

This Adversary Proceeding is before the Court on two motions for summary judgment. Summary judgment is only proper when there are no genuine issues of material facts and the moving party is entitled to judgment as a mater of law.  See Fed. R. Civ. P. 56, made applicable to Adversary Proceedings pursuant to Fed. R. Bankr. P. 7056.  Rule 56(c) provides: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to

-4-

interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "When a party moves for summary judgment, the court construes the evidence and makes factual inferences in the light most favorable to the nonmoving party." Thomas v. Gulf Coast Credit Servs., Inc., 214 F.Supp.2d 1228, 1231 (M.D. Ala. 2002). The court does not "weigh the evidence to determine the truth of the matter, but solely determines whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

The initial burden is on the moving party to prove that there are no material facts in dispute. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to establish that there are material facts in dispute. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party, based on the applicable law in relation to the evidence presented." Thomas, 214 F.Supp.2d at 1231. If there are any material facts in dispute, summary judgment must be denied. Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983).

### B. Introduction

The Trustee's complaint contains three counts. Count I alleges a fraudulent conveyance under 11 U.S.C. § 544(b) and State fraudulent transfer laws.[1] Count II alleges a fraudulent

---

[1] The Trustee alleges, in the alternative, that the transfers in question should be avoided under both Georgia and Alabama law. Given the Court's disposition of this matter, it is irrelevant whether the Alabama or Georgia fraudulent transfer acts are applied.

Case 05-03051   Doc 50   Filed 02/20/07   Entered 02/20/07 14:18:37   Desc Main
Document   Page 5 of 12

conveyance under 11 U.S.C. § 548. Count III alleges preferential transfers. The Court will divide its discussion into two parts. First, the Court will discuss the fraudulent conveyance claims. Second, the Court will discuss the preference claims.

### C. The Fraudulent Conveyance Claims

#### 1. The Elements of a Fraudulent Conveyance

Fraudulent conveyances are defined in section 548 of the Bankruptcy Code as well as in the Alabama Fraudulent Transfer Act. Regardless of whether one looks at Federal law or State law, fraudulent transfers are divided into two subcategories: (1) actual fraud; and (2) constructive fraud. The first of these two kinds of fraudulent transfers is actual fraud, which is:

1. A transfer by the debtor of an interest in property;

2. With the actual intent to hinder, delay or defraud creditors.

11 U.S.C. § 548(a)(1)(A); see also, 11 U.S.C. § 544 and ALA. CODE § 8-9A-4.

A constructive fraudulent transfer is:

1. A transfer by the debtor of an interest in property;

2. The debtor received less than a reasonably equivalent value in the exchange; and

3. The debtor was insolvent on the date that the transfer was made.

11 U.S.C. § 548(a)(1)(B); see also, 11 U.S.C. § 544 and ALA. CODE § 8-9A-5. For purposes of deciding this motion, the Court will assume that the Trustee has established that the transfers in question were fraudulent conveyances, both under § 548 of the Bankruptcy Code as well as the pertinent sections of the Alabama Fraudulent Transfer Act, as made applicable pursuant to 11 U.S.C. § 544. This motion turns on the question of whether Cherniak and Martin have established, with uncontroverted evidence, their defense to the Trustee's fraudulent conveyance

Case 05-03051   Doc 50   Filed 02/20/07   Entered 02/20/07 14:18:37   Desc Main
Document   Page 6 of 12

claims under 11 U.S.C. § 550(b).

## 2. The Section 550(b) defense

Section 550 of the Bankruptcy Code provides, in part, as follows:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544 . . . 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from–
>
>> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>>
>> (2) any immediate or mediate transferee of such initial transferee.
>
> (b) The trustee may not recover under section (a)(2) of this section from–
>
>> (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidablility of the transfer avoided; or
>>
>> (2) any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550.

Examination of § 550(a) and (b) reveals two things. First, subsection (a) divides the universe of possible fraudulent transferees into two categories. The first category consists of those called "initial transferees." The second category consists of those called "immediate or mediate" transferees from the initial transferee. Second, those in the later category are allowed a defense pursuant to § 550(b) that is not given to those in the first category. In other words, an immediate or mediate transferee from the initial transferee may avoid liability if she can prove

-7-

two things.  First, she must prove that she took the transfer for value; and second, she must prove that she did not have knowledge that the transfer in question was avoidable.  The law does not provide the initial transferee this defense.

The Court has carefully examined the affidavits of both Cherniak and Martin and finds that these two elements are established.  Both Cherniak and Martin provided services at the request of Steel and were paid for those services.  The services were ultimately to benefit Rudolph Terry in that Cherniak and Martin were assisting Steel in defending Rudolph Terry in a criminal case.  The Trustee does not contest the Defendants' claims that they provided services which were reasonably equivalent in value to the money paid.  Rather, the Trustee contends that the services did not benefit Terry Manufacturing, the entity which actually paid Steel for all of the criminal defense related services.  However, a defendant who asserts this defense need not prove that he gave value to the debtor, but rather to the initial transferor.  See Bonded Fin.Servs, Inc. v. European American Bank, 838 F.2d 890, 897 (7th Cir. 1988) (stating that § 550(b) does not require value to the debtor, only that the defendant gave value, and that a "natural reading looks to what the transferee gave up rather than what the debtor received").  As the initial transferor was Steel, and as Cherniak and Martin are immediate transferees from Steel, it was Steel who is to be the recipient of value.  To hold otherwise, as urged by the Trustee here, would completely gut any § 550(b) defense, making it a dead letter.

The Trustee has produced no evidence to suggest that Cherniak and Martin did not take in good faith, or that they had any reason to know that the transfer from Steel to them was an avoidable transfer.  One should consider the difference in posture of the initial transferee and a downstream transferee.  The initial transferee takes directly from the debtor.  Steel was put on

-8-

notice that something was amiss when he received a check from Terry Manufacturing in payment for a debt owed by Rudolph Terry. He could have questioned the transfer, returned the check to Terry Manufacturing, and insisted that Rudolph Terry pay the bill for his attorney's fees. Steel did not do so; rather he took the check and deposited it in his checking account. The evidence is clear that both Cherniak and Martin were paid with checks drawn by Steel on his own account and not with a check from Terry Manufacturing.[2] The evidence here is uncontroverted that both Cherniak and Martin gave value and acted in good faith without knowledge of the avoidablity of the transfers.

The Trustee questions the credibility of various witnesses and parties here. Rudolph Terry is a convicted felon whose credibility is suspect. Moreover, Cherniak and Martin are both parties to this Adversary Proceeding with a direct interest in the outcome of this litigation. However, the Trustee must do something more than note that the Defendants are both biased witnesses. If the Trustee had conflicting evidence the Court would be bound to deny the motions and try this Adversary Proceeding. He does not.

### 3. The Trustee's Conduit Theory

The Trustee contends that Cherniak and Martin are not within the scope of the protection of § 550(b). One must bear in mind that the initial transferee from the debtor is not protected under that section. The Bankruptcy Code does not define the term "initial transferee." At first glance, one might wonder why a definition should be necessary. It appears plain enough that the

---

[2] Both Cherniak and Steel submitted copies of checks drawn on the escrow account of "The Steel Law Firm, P.C." in their evidentiary submission in support of their motions for summary judgment. (Docs. 36, 40). Moreover, the memo line on the checks makes reference to Rudolph Terry and not Terry Manufacturing.

Case 05-03051   Doc 50   Filed 02/20/07   Entered 02/20/07 14:18:37   Desc Main
Document      Page 9 of 12

"initial transferee" is the one who first receives the transfer from the debtor. As initial means first, one might think that is the end of the matter.

The United States Court of Appeals for the Eleventh Circuit recognized the "conduit theory" in a case handed down in 1990. Nordberg v. Arab Banking Corp. (In re Chase & Sandborn Corp.), 904 F.2d 588, 598 (11th Cir. 1990); see also, IBT International, Inc., v. Northern (In re International Admin. Servs., Inc.), 408 F.3d 689, 705 (11th Cir. 2005) (stating that "conduit notion is the law in this Circuit"). This conduit notion or theory provides that the first entity which receives a transfer from a debtor may be so controlled by the debtor that it cannot be said to be an initial transferee. Id., see also, First National Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Servs., Inc.), 974 F.2d 712, 721-23 (6th Cir. 1992) (finding that the Bank had sufficient dominion and control over the funds to make it an initial transferee); Huffman v. Commerce Security Corp. (In re Harbour), 845 F.2d 1254, 1257 (4th Cir. 1988) (adopting the mere conduit test but rejecting its application in that case); Bonded, 838 F.2d at 893-98 (holding that the Bank was a mere conduit and not the initial transferee). Thus, in those cases where the conduit theory is found to apply, the initial transferee is the first downstream recipient who is not controlled by the debtor.

Considering whether the conduit theory should apply to this Adversary Proceeding, the question becomes whether Steel was so controlled by Terry Manufacturing so as to be a mere conduit, thereby making Cherniak and Martin initial transferees rather than immediate or mediate transferees from the initial transferee. The question of whether one is an initial transferee or a mere conduit necessarily turns on the facts of each individual case. However, given the evidence here, it is clear that Steel had sufficient control over the funds in question so

-10-

as make him, as a matter of law, an initial transferee and not a mere conduit. To be sure, Steel was contractually bound to pay both Cherniak and Martin; however, this fact does not make him a conduit. Once Steel received the funds from Terry Manufacturing, he was free to do with them what he will. Had he not paid Cherniak or Martin, they would have had a breach of contract action against him, but he cannot be said to have converted their money or violated a duty owed to Terry Manufacturing

The Court acknowledges that Steel deposited the funds paid by Terry Manufacturing into an escrow account. As a lawyer, Steel was bound to safeguard his clients' funds. The money was placed in escrow to protect the client, not to be paid out either to Steel, Cherniak, or Martin until the funds were earned. While Steel was under an additional duty as a lawyer to safeguard his clients' funds, it does not follow that the lawyer is a mere instrumentality for his client. For example, had the services performed by Cherniak or Martin not been satisfactory, Steel could have withheld the money. Having examined the Trustee's evidentiary submission, the Court concludes that Steel had sufficient control over the funds in suit so as to make him the initial transferee here and not a mere conduit.

### D. The Preference Claim

In Count III of his Complaint, the Trustee alleges that the transfers in question are voidable preferences within the meaning of 11 U.S.C. § 547. Section 547(b) provides as follows:

> The trustee may avoid any transfer of an interest of the debtor in property–
>
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

Case 05-03051    Doc 50    Filed 02/20/07    Entered 02/20/07 14:18:37    Desc Main
Document    Page 11 of 12

(3) made while the debtor was insolvent;
(4) made (A) on or within 90 days before the date of the petition.

11 U.S.C. § 547(b).

Given the findings made by the Court above, it is readily apparent that there is no voidable preference here. First, the transfer in question was made by Terry Manufacturing to Steel. As Steel was not a conduit, there was no transfer from Terry Manufacturing to Cherniak or Martin. Moreover, both Cherniak and Martin were creditors of Steel and were not creditors of Terry Manufacturing. In fairness to the Trustee, had this Court found for the Trustee on his conduit theory, the result would be different. Given the findings made by the Court above, the Trustee's preference case falls of its own weight.

### III. CONCLUSION

The Trustee seeks to set aside certain transfers as fraudulent conveyances. Terry Manufacturing paid Steel $127,000.00, to be used for Rudolph Terry's criminal defense. In turn, Steel paid $33,333.00 to Cherniak to do some of the legal work and paid Martin $27,000.00 to do some financial investigation. As Cherniak and Martin gave value for the money transferred to them, as they took in good faith, without knowledge of the avoidability of the transfer, and because they are not initial transferees, within the meaning of 11 U.S.C. § 550, the Trustee may not recover from either Cherniak or Martin.

Done this the 20th day of February, 2007.

/s/ William R. Sawyer
United States Bankruptcy Judge

-12-